**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **DAVID LANCE,** *individually and on behalf of others similarly situated***,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **TRINITY UNIVERSAL INSURANCE COMPANY,** <br><br> **Defendant.** | **CASE NO.** <br><br><br> **DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff David Lance ("Plaintiff"), by and through undersigned counsel, on behalf of himself and all others similarly situated, alleges the following Class Action Complaint (the "Action") against Defendant Trinity Universal Insurance Company ("TUIC" or "Defendant") upon personal knowledge as to himself and his own actions, and upon information and belief, including the investigation of counsel as follows:

### I.      SUMMARY

1.      Plaintiff brings this Action on behalf of himself and all other similarly situated victims as a result of a recent data breach involving the personally identifiable information of customers of Trinity Universal Insurance Company.

2.      Between July 7, 2023, and July 10, 2023, an unknown and unauthorized criminal actor gained access to Defendant's backup tapes and exfiltrated, at a minimum, customer names in combination with one or more of the following elements: date of birth, Social Security number, driver's license number, passport, government or state issued identification number, financial

**1**

account number, payment card number, medical treatment information and/or health insurance information. ("Personal Information").

3.      In Notice of Data Security Incident Breach letter, attached hereto as Exhibit A, Defendant posted on their website:

> Trinity Universal Insurance Company ("TUIC") and its subsidiaries* responded to a data security incident that involved the personal information of some individuals. This notice explains the incident, measures we have taken, and steps you may consider taking in response.
>
> We completed an investigation into an incident involving backup tapes that went missing from a TIUC office that was in the process of moving to another location. These backup tapes were contained in a padlocked case ("lockbox") and went missing sometime between July 7, 2023 and July 10, 2023. Immediately upon learning of the issue, we began an investigation and attempted to locate the lockbox, but were unsuccessful. We also notified law enforcement. There is no indication that the lockbox was stolen or that any information on the tapes has been accessed or misused.
>
> We conducted a comprehensive review of the data that could have been contained on the backup tapes, which involved a time-and-labor-intensive effort to reconstruct the data, and, on January 10, 2024, determined that the tapes contained information about certain individuals. While the analysis is ongoing, the information in the files varied by individual, but included the individuals' names and one or more of the following data elements: date of birth, Social Security number, driver's license number, passport, government or state issued identification number, financial account number, payment card number, medical treatment information and/or health insurance information.

4.      Defendant thereafter admonishes victims "we are offering eligible individuals a complimentary membership to Identity Defense Complete credit monitoring service.

5.      To be clear – there are numerous issues with Defendant's Data Breach, but the deficiencies in the Data Breach notification letter exacerbate the circumstances for victims of the Data Breach: Defendant's lockbox went missing between July 7, 2023 and July 10, 2023, but they did not notify any victims until *six* months later on or around February 15, 2024. All of this

information is vital to victims of a data breach, let alone a data breach of this magnitude due to the sensitivity and wide array of information compromised in this specific breach.

6.      As a result of the Data Breach, Plaintiff and Class Members suffered injury and ascertainable losses in the form of the present and imminent threat of fraud and identity theft, loss of the benefit of their bargain, out-of-pocket expenses, loss of value of their time reasonably incurred to remedy or mitigate the effects of the attack, and the loss of, and diminution in, value of their Personal Information.

7.      In addition, Plaintiff's and Class Members' sensitive Personal Information —which was entrusted to Defendant — was compromised and unlawfully accessed due to the Data Breach. This information, while compromised and taken by unauthorized third parties, remains also in the possession of Defendant, and without additional safeguards and independent review and oversight, remains vulnerable to future cyberattacks and theft.

8.      The Data Breach was a direct result of Defendant's failure to implement adequate and reasonable procedures and protocols necessary to protect victims' Personal Information.

9.      Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Class Members' Personal Information that Defendant collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information had been subject to the unauthorized access by an unknown third party.

10.     Defendant maintained the Personal Information in a reckless manner. In particular, the Personal Information was made available to third parties and was improperly safeguarded.

11.     The mechanism of the data breach and potential for improper disclosure of Plaintiff's and Class Members' Private Information was a known risk to Defendant and entities

like it, and Defendant was thus on notice that failing to take steps necessary to secure the Personal Information against those risks left that property in a dangerous condition and vulnerable to theft. Defendant was further on notice of the severe consequences that would result to Plaintiff and Class Members from its failure to safeguard their Personal Information.

12.     Defendant disregarded the rights of Plaintiff and Class Members (defined below) by, *inter alia*, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data was protected against unauthorized intrusions;; failing to take standard and reasonably available steps to prevent the Data Breach; failing to properly train its staff and employees on proper security measures; and failing to provide Plaintiff and Class Members prompt notice of the Data Breach.

13.     In addition, Defendant and its employees failed to properly monitor the backup tapes that housed the Personal Information. Had Defendant properly monitored its backup tapes, it would have discovered the intrusion sooner, as opposed to letting unknown actors roam freely through Defendant's backup tapes.

14.     Plaintiff's and Class Members' identities are now at risk because of Defendant's negligent conduct since the Personal Information that Defendant collected and maintained is now in the hands of data thieves. This present risk will continue for their respective lifetimes.

15.     Armed with the Personal Information accessed in the Data Breach, data thieves can commit a variety of crimes including, e.g., opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

16.     As a result of the Data Breach, Plaintiff and Class Members have been exposed to a present and imminent risk of fraud and identity theft. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

17.     Plaintiff and Class Members will incur out of pocket costs for, e.g., purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

18.     Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals whose Personal Information was accessed during the Data Breach.

19.     Plaintiff seeks remedies including, but not limited to, actual damages, compensatory damages, nominal damages, and reimbursement of out-of-pocket costs.

20.     Plaintiff also seeks injunctive and equitable relief to prevent future injury on behalf of himself and the putative Class.

## II.     JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members is over 100, many of whom reside outside the state of Texas and have different citizenship from Defendant, including Plaintiff Lance, who is a citizen of Virginia. Thus, minimal diversity exists under 28 U.S.C. §1332(d)(2)(A).

22.     This Court has jurisdiction over Defendant because Defendant operates in this District.

23.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Defendant's principal place of business is located in this District, a substantial part of the events

giving rise to this action occurred in this District, and Defendant has harmed Class Members residing in this District.

III.    **PARTIES**

   *Plaintiff David Lance*

24.    Plaintiff David Lance is an individual citizen of Texas and received a Notice of Data Breach letter from Defendant dated February 15, 2024. Plaintiff Lance's data was exposed because he was a customer of Defendant.

   *Defendant Trinity Universal Insurance Company*

25.    Defendant Trinity Universal Insurance Company is a Texas Insurance Company with its principal place of business located in Dallas, Texas. Defendant provides insurance and financial services throughout Texas and the United States.

IV.    **FACTUAL ALLEGATIONS**

   *Defendant's Business*

26.    Trinity Universal Insurance Company is an insurance company and subsidiary of Kemper Independence Insurance Company. TUIC provides a range of insurance products, including property, burglary, fire, automobile, casualty, personal, commercial, homeowners, liability, and workers' compensation coverage.[1]

27.    Defendant collects personally identifiable information from their respective customers in the course of doing business. This personally identifiable information includes the Personal Information which was compromised in the Data Breach alleged herein.

28.    Prior to receiving services from Defendant, Plaintiff and Class Members were required to and did in fact turn over their Personal Information.

---

[1] https://www.jdsupra.com/legalnews/trinity-universal-insurance-company-9036316/ (last accessed Feb. 28, 2024)

29.     Upon information and belief, Defendant promises to maintain the confidentiality of Plaintiff's and Class Members' Private Information to ensure compliance with federal and state laws and regulations, and not to use or disclose Plaintiff's and Class Members' Private Information for non-essential purposes.

30.     As a condition of receiving Defendant's services, Defendant requires that Plaintiff and Class Members entrust it with highly sensitive personal information.

31.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure.

32.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information. Plaintiff and Class Members would not have entrusted Defendant with their Private Information had they known that Defendant would fail to implement industry standard protections for that sensitive information.

33.     Plaintiff and the Class Members relied on Defendant to keep their Personal Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

**_The Attack and Data Breach_**

34.     On or around February 15, 2024, Defendant informed Plaintiff and the Class Members via the Notice that:

> Trinity Universal Insurance Company ("TUIC") and its subsidiaries* responded to a data security incident that involved the personal information of some individuals. This notice explains the incident, measures we have taken, and steps you may consider taking in response.

7

We completed an investigation into an incident involving backup tapes that went missing from a TIUC office that was in the process of moving to another location. These backup tapes were contained in a padlocked case ("lockbox") and went missing sometime between July 7, 2023 and July 10, 2023. Immediately upon learning of the issue, we began an investigation and attempted to locate the lockbox, but were unsuccessful. We also notified law enforcement. There is no indication that the lockbox was stolen or that any information on the tapes has been accessed or misused.

We conducted a comprehensive review of the data that could have been contained on the backup tapes, which involved a time-and-labor-intensive effort to reconstruct the data, and, on January 10, 2024, determined that the tapes contained information about certain individuals. While the analysis is ongoing, the information in the files varied by individual, but included the individuals' names and one or more of the following data elements: date of birth, Social Security number, driver's license number, passport, government or state issued identification number, financial account number, payment card number, medical treatment information and/or health insurance information.

35.     The personally identifiable information that was compromised includes but is not limited to customer names and Social Security numbers and other data provided to Defendant.

36.     The Data Breach Notice letter also states that Defendant is offering victims of the Data Breach credit monitoring services. With its offer of credit monitoring services, Defendant is acknowledging that Plaintiff and Class Members are subject to an imminent threat of identity theft and financial fraud.

37.     Due to Defendant's inadequate security measures, Plaintiff and the Class Members now face a present, immediate, and ongoing risk of fraud and identity theft and must deal with that threat forever.

38.     Upon information and belief, the Personal Information was not encrypted prior to the data breach.

39.     Upon information and belief, the data breach was targeted at Defendant as a company that collects and maintains valuable personal and financial data from its many customers, including Plaintiff and Class Members.

8

40.     Upon information and belief, the data breach was expressly designed to gain access to private and confidential data, including (among other things) the Personal Information of Plaintiff and Class Members.

41.     Defendant had obligations to keep Plaintiff's and Class Members' Personal Information confidential and to protect it from unauthorized access and disclosure.

42.     Plaintiff and Class Members provided their Personal Information to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

**_The Data Breach Was Foreseeable and the Defendant Was Aware of Its Risk_**

43.     It is well known that Personal Information, including Social Security numbers and customer names in particular are invaluable commodities and a frequent target of hackers.

44.     In 2021, there were a record 1,862 data breaches last year, surpassing both 2020's total of 1,108 and the previous record of 1,506 set in 2017.[2]

45.     Individuals place a high value not only on their Personal Information, but also on the privacy of that data. For the individual, identity theft causes "significant negative financial impact on victims" as well as severe distress and other strong emotions and physical reactions.

46.     Individuals are particularly concerned with protecting the privacy of their Social Security numbers, which are the "secret sauce" that is "as good as your DNA to hackers." There are long-term consequences to data breach victims whose social security numbers are taken and used by hackers. Even if they know their Social Security numbers have been accessed, Plaintiff and Class Members cannot obtain new numbers unless they become a victim of Social Security

---

[2] Bree Fowler, _Data breaches break record in 2021_, CNET (Jan. 24, 2022), https://www.cnet.com/tech/services-and-software/record-number-of-data-breaches-reported-in-2021-new-report-says/.

number misuse. Even then, the Social Security Administration has warned that "a new number probably won't solve all [] problems … and won't guarantee … a fresh start."

47.     In light of recent high profile data breaches at other industry leading companies, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), and, in light of the recent data breaches Wells Fargo has suffered, Defendant knew or should have known that its electronic records would be targeted by cybercriminals.

48.     Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

49.     Despite the prevalence of public announcements of data breach and data security compromises, and despite their own acknowledgment of its duties to keep Personal Information private and secure, Defendant failed to take appropriate steps to protect the Personal Information of Plaintiff and the proposed Class from being compromised.

### *Defendant Had A Duty to Plaintiff and Class Members to Secure Private Information*

50.     At all relevant times, Defendant had a duty to Plaintiff and Class Members to properly secure their Personal Information, maintain such information using industry standard methods, train its employees, act reasonably to prevent foreseeable harm to Plaintiff and Class Members, and to *promptly* notify Plaintiff and Class Members when Defendant became aware that their Personal Information may have been compromised.

51.     Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant, on the one hand, and Plaintiff and the Class Members, on the other hand. The special relationship arose because Plaintiff and the Members of the Class

relied on Defendant to secure their Personal Information when they entrusted Defendant with the information required for employment.

52.     Defendant had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, despite its obligation to protect such information. Accordingly, Defendant breached its common law, statutory, and other duties owed to Plaintiff and Class Members.

53.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[3] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[4]

54.     The ramifications of Defendant's failure to keep its customers' Personal Information secure are long lasting and severe. Once Personal Information is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims is likely to continue for years.

### The Value of Personally Identifiable Information

55.     The Personal Information of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price

---

[3] 17 C.F.R. § 248.201 (2013).
[4] *Id.*

ranging from $40 to $200, and bank details have a price range of $50 to $200.[5] According to the Dark Web Price Index for 2021, payment card details for an account balance up to $1,000 have an average market value of $150, credit card details with an account balance up to $5,000 have an average market value of $240, stolen online banking logins with a minimum of $100 on the account have an average market value of $40, and stolen online banking logins with a minimum of $2,000 on the account have an average market value of $120.[6]

56.     As a growing number of federal courts have begun to recognize the loss of value of Personal Information as a viable damages theory, the sale of Personal Information from data breaches, as in the Data Breach alleged herein, is particularly harmful to data breach victims – especially when it takes place on the dark web.

57.     The dark net is an unindexed layer of the internet that requires special software or authentication to access.[7] Criminals in particular favor the dark web as it offers a degree of anonymity to visitors and website publishers. Unlike the traditional or 'surface' web, dark web users need to know the web address of the website they wish to visit in advance. For example, on the surface web, the CIA's web address is cia.gov, but on the dark web the CIA's web address is ciadotgov4sjwlzihbbgxnqg3xiyrg7so2r2o3lt5wz5ypk4sxyjstad.onion.[8] This prevents dark web marketplaces from being easily identifiable to authorities or those not in the know.

58.     A sophisticated black market exists on the dark web where criminals can buy or sell malware, firearms, drugs, and frequently, personal and medical information like the Personal

---

[5] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed Jan. 9, 2024).
[6] *Dark Web Price Index 2021*, Zachary Ignoffo, March 8, 2021, *available at*: https://www.privacyaffairs.com/dark-web-price-index-2021/ (last accessed Jan. 9, 2024).
[7] *What Is the Dark Web?,* Experian, *available at* https://www.experian.com/blogs/ask-experian/what-is-the-dark-web/ (last accessed Jan. 9, 2024).
[8] *Id.*

Information at issue here.[9] The digital character of Personal Information stolen in data breaches lends itself to dark web transactions because it is immediately transmissible over the internet and the buyer and seller can retain their anonymity. The sale of a firearm or drugs on the other hand requires a physical delivery address. Nefarious actors can readily purchase usernames and passwords for online streaming services, stolen financial information and account login credentials, and Social Security numbers, dates of birth and medical information.[10] As Microsoft warns "[t]he anonymity of the dark web lends itself well to those who would seek to do financial harm to others." [11]

59.     Plaintiff and Class Members' Personal Information is a valuable commodity, a market exists for Plaintiff and Class Members' Personal Information (which is why the Data Breach was perpetrated in the first place), and Plaintiff and Class Members' Personal Information is being likely being sold by hackers on the dark web (as that is the *modus operandi* of data thieves) – as a result, Plaintiff and Class Members have lost the value of their Personal Information, which is sufficient to plausibly allege injury arising from a data breach.

60.     An active and robust legitimate marketplace for Personal Information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[12] In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[13][14]

---

[9] *What is the Dark Web?* – Microsoft 365, *available at* https://www.microsoft.com/en-us/microsoft-365-life-hacks/privacy-and-safety/what-is-the-dark-web (last accessed Jan. 9, 2024).

[10] *Id.*; *What Is the Dark Web?,* Experian, *available at* https://www.experian.com/blogs/ask-experian/what-is-the-dark-web/(last accessed Jan. 9, 2024).

[11] *What is the Dark Web?* – Microsoft 365, *available at* https://www.microsoft.com/en-us/microsoft-365-life-hacks/privacy-and-safety/what-is-the-dark-web (last accessed Jan. 9, 2024).

[12] https://www.latimes.com/business/story/2019-11-05/column-data-brokers (last accessed Jan. 9, 2024).

[13] https://datacoup.com/ (last accessed Jan. 9, 2024).

[14] https://digi.me/about-us (last accessed Jan. 9, 2024).

Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50.00 a year.[15]

61.    The Personal Information stolen in this specific Data Breach was particularly harmful. Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change.

62.    The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[16]

63.    Furthermore, trying to change or cancel a stolen Social Security number is no minor task. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

64.    Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that

---

[15]    Nielsen Computer & Mobile Panel, Frequently Asked Questions, available at https://computermobilepanel.nielsen.com/ui/US/en/faqen.html (last accessed Jan. 9, 2024).
[16]   Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed Jan. 9, 2024).

old bad information is quickly inherited into the new Social Security number."[17]

65.     This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[18]

66.     Personal Information can be used to distinguish, identify, or trace an individual's identity, such as their name and Social Security number. This can be accomplished alone, or in combination with other personal or identifying information that is connected or linked to an individual, such as their birthdate, birthplace, and mother's maiden name.[19]

67.     Given the nature of Defendant's Data Breach, as well as the delay in notification to Class Members, it is foreseeable that the compromised Personal Information has been or will be used by hackers and cybercriminals in a variety of devastating ways. Indeed, the cybercriminals who possess Plaintiff's and Class Members' Personal Information can easily obtain Plaintiff's and Class Members' tax returns or open fraudulent credit card accounts in Class Members' names.

68.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because credit card victims can cancel or close credit and debit card accounts.[20] The

---

[17]     Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last accessed Jan. 9, 2024).

[18]     Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, Computer World (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed December 10, 2021).

[19] *See* OFFICE OF MGMT. & BUDGET, OMB MEMORANDUM M-07-16 n. 1.

[20]  *See* Jesse Damiani, *Your Social Security Number Costs $4 On The Dark Web, New Report Finds*, Forbes, Mar 25, 2020, *available at*: https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1  (last accessed Jan. 9, 2024).

information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change (such as Social Security numbers and dates of birth).

69.     To date, Defendant has offered its victims *only one year* of identity monitoring services. The offered services are inadequate to protect Plaintiff and Class Members from the threats they face for years to come, particularly in light of the Personal Information at issue here.

70.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for its current and former customers.

### Plaintiff's Experience

71.     Plaintiff was required to provide and did provide his Personal Information to Defendant as a condition of receiving insurance with Defendant.

72.     To date, Defendant has done next to nothing to adequately protect Plaintiff and Class Members, or to compensate them for their injuries sustained in this Data Breach particularly given the fact that Plaintiff's Personal Information has already been "impacted" in the Data Breach and likely been made available on the dark web to anyone wishing to purchase it.

73.     The fraud and identity monitoring services offered by Defendant are only for one year, and it places the burden squarely on Plaintiff and Class Members by requiring them to expend time signing up for the service.

74.     Nor has Defendant compensated Plaintiff and Class Members for the time they will spend monitoring their accounts, placing credit freezes and fraud alerts, changing online passwords and other actions.

75.     Plaintiff and Class Members have been further damaged by the compromise of their Personal Information in the Data Breach which was "impacted" and is in the hands of

cybercriminals who illegally accessed Defendant's network for the specific purpose of targeting the Personal Information.

76.     Plaintiff typically takes measures to protect his Personal Information and is very careful about sharing his Personal Information. Plaintiff has never knowingly transmitted unencrypted Personal Information over the internet or other unsecured source.

77.     Plaintiff stores any documents containing his Personal Information in a safe and secure location, and he diligently chooses unique usernames and passwords for his online accounts.

78.     As a result of the Data Breach, Plaintiff has suffered a loss of time and has spent and continues to spend a considerable amount of time on issues related to this Data Breach. In response to the Data Breach, Plaintiff has spent significant time monitoring his accounts and credit score, changing his online account passwords and verifying the legitimacy of the Notice and researching the Data Breach. This is time that was lost and unproductive and took away from other activities and duties.

79.     Specifically, since the date of the breach Plaintiff has spent over twenty-four (24) hours taking action to mitigate the harm he has suffered. Plaintiff (1) he has spent, and continues to spend, considerable time and effort actively monitoring his accounts and credit; and (2) he has lost sleep due to the stress and anxiety he now suffers from the fear of his Personal Information being exposed, misused and sold on the black market.

80.     Plaintiff also suffered actual injury in the form of damages to and diminution in the value of his Personal Information — a form of intangible property that he entrusted to Defendant for the purpose of obtaining services from Defendant, which was compromised in and as a result of the Data Breach.

81.     Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result

of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

82.     Plaintiff suffered emotional distress and increased stress and anxiety as a result of the Data Breach because of the actions he has been forced to undertake, the loss of control over his most intimate information, and the fact that he must remain vigilant for the remainder of his life.

83.     Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his Personal Information, especially his Social Security Number, being placed in the hands of criminals.

84.     Defendant obtained and continues to maintain Plaintiff's Personal Information and has a continuing legal duty and obligation to protect that Personal Information from unauthorized access and disclosure. Defendant required the Personal Information from Plaintiff as a condition of sale by Defendant. Plaintiff, however, would not have entrusted his Personal Information to Defendant had he known that it would fail to maintain adequate data security. Plaintiff's Personal Information was compromised and disclosed as a result of the Data Breach.

85.     As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## V.     CLASS ACTION ALLEGATIONS

86.     Plaintiff brings this suit on behalf of themselves and as a class action under Fed. R. Civ. P 23(a) and (b), on behalf of the following proposed Class:

> All persons Defendant has identified as being among those individuals impacted by the Data Breach, including all who were sent a notice of the Data Breach (the "Class").

87.     Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

88.     **Numerosity.** The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, it is likely that hundreds, if not thousands, of individuals had their Personal Information compromised in this Data Breach, given the Defendant operates in over 100 markets in the United States. The identities of Class Members are ascertainable through Defendant's records, Class Members' records, publication notice, self-identification, and other means.

89.     **Commonality.** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

      i.   Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Personal Information;

     ii.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    iii.   Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

    iv.   Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

v.   Whether Defendant owed a duty to Class Members to safeguard their Personal Information;

vi.   Whether Defendant breached its duty to Class Members to safeguard their Personal Information;

vii.   Whether computer hackers obtained Class Members' Personal Information in the Data Breach;

viii.   Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

ix.   Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

x.   Whether Defendant's conduct was negligent; and;

xi.   Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

90.   **Typicality.** Plaintiff's claims are typical of those of other Class Members because Plaintiff's Personal Information, like that of every other Class member, was compromised in the Data Breach.

91.   **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel is competent and experienced in litigating Class actions, including data privacy litigation of this kind.

92.   **Predominance.** Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any

individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

93.     **Superiority.** A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

94.     Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

95.     Likewise, particular issues under Federal Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

        xii.  Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Personal Information;

       xiii.  Whether Defendant's security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

    xiv.   Whether Defendant's failure to institute adequate protective security measures amounted to negligence; and

    xv.   Whether Defendant failed to take commercially reasonable steps to safeguard Personal Information,

96.    Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## VI.    CAUSES OF ACTION

## COUNT I
## NEGLIGENCE

97.    Plaintiff repeats and re-alleges paragraphs 1 through 96 of this Complaint and incorporates them by reference herein.

98.    Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Personal Information for pecuniary gain, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

99.    Defendant had a duty under common law to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' Personal Information.

100.    Defendant had full knowledge of the sensitivity of the Personal Information and the types of harm that Plaintiff and Class Members could and would suffer if the Personal Information were wrongfully disclosed. The harm that Plaintiff and Class Members experienced was within the zone of foreseeable harm known to Defendant.

101.    Defendants' duty to use reasonable security measures arose as a result of the special relationship that existed between each Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendants with their confidential Personal Information, a mandatory step in receiving services from Defendant. While this special relationship exists independent from any contract, it is recognized by Defendant's privacy practices, as well as applicable laws and regulations. Specifically, Defendant actively solicited and gathered Personal Information as part of their businesses and were solely responsible for and in the position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class Members from a resulting data breach.

102.    Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff and the Class, to maintain adequate data security.

103.    A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices and the frequency of data breaches in general.

104.    Defendant also had a common law duty to prevent foreseeable harm to others. Plaintiff and the Class were the foreseeable and probable victims of Defendant's inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Personal Information of Plaintiff and the Class, the critical importance of adequately safeguarding that Personal Information, and the necessity of encrypting Personal Information stored on Defendant's systems. It was foreseeable that Plaintiff and Class members would be harmed by the failure to protect their personal information because hackers are known to routinely attempt to steal such information and use it for nefarious purposes.

105.    Defendant's conduct created a foreseeable risk of harm to Plaintiff and the Class. Defendant's wrongful conduct included, but was not limited to, their failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included their decision not to comply with industry standards for the safekeeping of Plaintiff's and the Class's Personal Information, including basic encryption techniques available to Defendant.

106.    Plaintiff and the Class had and have no ability to protect their Personal Information that was in, and remains in, Defendant's possession.

107.    Defendant was in a position to effectively protect against the harm suffered by Plaintiffs and the Class as a result of the Data Breach.

108.    By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard their property—and Class Members' Personal Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which they could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

109.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Personal Information within Defendant's possession.

110.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's and Class Members' Personal Information.

111.    Defendant, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiff and Class Members that the Personal Information within Defendant's possession might have been compromised and precisely the type of information compromised.

112.    Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' Personal Information to be compromised.

113.    Pursuant to Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTCA"), Defendant had a separate and independent duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class members' Personal Information.

114.    The FTCA is intended, in part, to protect individuals whose Personal Information is maintained by another and who are unable to safeguard their information as they cannot exercise control or direction over the data security practices.

115.    Plaintiff and the members of the Class are within the class of persons that the FTCA was intended to protect as their Personal Information was collected and maintained by Defendant and they were unable to exercise control over Defendant's data security practices.

116.    The harm that occurred as a result of the Data Breach is the type of harm the FTCA was intended to guard against.

117.    The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the members of the Class.

118.    Defendant breached its duties to Plaintiffs and the members of the Class under the Federal Trade Commission Act by failing to provide fair, reasonable, or adequate computer

systems and data security practices to safeguard Plaintiffs' and Class members' Private Information.

119.    Had Plaintiffs and the members of the Class known that Defendant would not adequately protect their Private Information, Plaintiffs and the members of the Class would not have entrusted Defendant with their Private Information.

120.    Defendant's failure to comply with applicable laws and regulations constitutes negligence per se.

121.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and the members of the Class, they would not have been injured.

122.    The injury and harm suffered by Plaintiff and the members of the Class was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet their duties, and that Defendant's breach would cause Plaintiff and the members of the Class to experience the foreseeable harms associated with the exposure of their Private Information.

123.    As a direct and proximate result of Defendant's negligence and negligence per se, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to control how their Personal Information is used; (iii) the compromise, publication, and/or theft of their Personal Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Personal Information for Plaintiff's and Class Members' respective lifetimes; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and

recover from tax fraud and other identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Personal Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the current and former customers' Personal Information in their continued possession; and (viii) present and future costs in the form of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the compromise of Personal Information as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class Members.

124.    As a direct and proximate result of Defendants' negligence and negligence per se, Plaintiffs and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

125.    Additionally, as a direct and proximate result of Defendant's negligence and negligence per se, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Personal Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Personal Information in its continued possession.

126.    As a direct and proximate result of Defendant's negligence and negligence per se, Plaintiff and the Class are now at an increased risk of identity theft or fraud.

127.    As a direct and proximate result of Defendant's negligence and negligence per se, Plaintiffs are entitled to and demand actual, consequential, and nominal damages and injunctive relief to be determined at trial.

## <u>COUNT II</u>
## BREACH OF IMPLIED CONTRACT

128.    Plaintiff repeats and re-alleges paragraphs 1 through 96 of this Complaint and incorporates them by reference herein.

129.    Plaintiff and the Class entrusted their Personal Information to Defendant as a condition of receiving Defendant's services. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

130.    At the time Defendant acquired the Personal Information of Plaintiffs and the Class, there was a meeting of the minds and a mutual understanding that Defendant would safeguard the Personal Information and not take unjustified risks when storing the Personal Information.

131.    Implicit in the agreements between Plaintiff and Class Members and Defendant to provide Personal Information, was the latter's obligation to: (a) use such Personal Information for business purposes only, (b) take reasonable steps to safeguard that Personal Information, (c) prevent unauthorized disclosures of the Personal Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Personal Information, (e) reasonably safeguard and protect the Personal Information of Plaintiff and Class Members from unauthorized disclosure or uses, and (f) retain the Personal Information only under conditions that kept such information secure and confidential.

132.    Plaintiff and the Class would not have entrusted their Personal Information to Defendant had they known that Defendant would make safeguard their Personal Information, not encrypt sensitive data elements such as Social Security numbers, and not delete the Personal Information that Defendant no longer had a reasonable need to maintain it.

133.    Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

134.    Defendant breached the implied contracts they made with Plaintiff and the Class by failing to safeguard and protect their personal information, by failing to provide timely and accurate notice to them that personal information was compromised as a result of the Data Breach.

135.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

136.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages to be determined at trial.

## COUNT III
## INVASION OF PRIVACY – INTRUSION UPON SECLUSION

137.    Plaintiff repeats and re-alleges paragraphs 1 through 96 of this Complaint and incorporates them by reference herein.

138.    Plaintiff and Class Members have a legally protected privacy interest in their Personal Information, which is and was collected, stored and maintained by Defendant, and they

are entitled to the reasonable and adequate protection of their Personal Information against foreseeable unauthorized access, as occurred with the Data Breach.

139.    Plaintiff and Class Members reasonably expected that Defendant would protect and secure their Personal Information from unauthorized parties and that their Personal Information would not be accessed, exfiltrated, and disclosed to any unauthorized parties or for any improper purpose.

140.    Defendant intentionally intruded into Plaintiff's and Class Members' seclusion by disclosing without permission their Personal Information to a third party. Defendant's acts and omissions giving rise to the Data Breach were intentional in that the decisions to implement lax security and failure to timely notice Plaintiff and the Class were undertaking willfully and intentionally.

141.    By failing to keep Plaintiff's and Class Members' Personal Information secure, and disclosing Personal Information to unauthorized parties for unauthorized use, Defendants unlawfully invaded Plaintiff's and Class Members' privacy right to seclusion by, inter alia:

     a. intruding into their private affairs in a manner that would be highly offensive to a reasonable person;

     b. invading their privacy by improperly using their Personal Information obtained for a specific purpose for another purpose, or disclosing it to unauthorized persons;

     c. failing to adequately secure their Personal Information from disclosure to unauthorized persons; and

     d. enabling the disclosure of their Personal Information without consent.

142.    This invasion of privacy resulted from Defendant's intentional failure to properly secure and maintain Plaintiff's and Class Members' Personal Information, leading to the foreseeable unauthorized access, exfiltration, and disclosure of this unguarded and private data.

143.    Plaintiff's and Class Members' Personal Information is the type of sensitive, personal information that one normally expects will be protected from exposure by the very entity charged with safeguarding it. Further, the public has no legitimate concern in Plaintiff's and Class Members' Personal Information, and such information is otherwise protected from exposure to the public by various statutes, regulations and other laws.

144.    The disclosure of Plaintiff's and Class Members' Personal Information to unauthorized parties is substantial and unreasonable enough to be legally cognizable and is highly offensive to a reasonable person.

145.    Defendant's willful and reckless conduct that permitted unauthorized access, exfiltration and disclosure of Plaintiff's and Class Members' sensitive Personal Information is such that it would cause serious mental injury, shame or humiliation to people of ordinary sensibilities.

146.    The unauthorized access, exfiltration, and disclosure of Plaintiff's and Class Members' Personal Information was without their consent, and in violation of various statutes, regulations and other laws.

147.    As a direct and proximate result of Defendant's intrusion upon seclusion, Plaintiff and Class Members suffered injury and sustained actual losses and damages as alleged herein. Plaintiff and Class Members alternatively seek an award of nominal damages.

<u>**COUNT IV**</u>
**UNJUST ENRICHMENT/QUASI CONTRACT**

148.    Plaintiff repeats and re-alleges paragraphs 1 through 96 of this Complaint and incorporates them by reference herein.

31

149.    This Count is brought in the alternative to Count II, Breach of Implied Contract.

150.    Plaintiff and Class Members conferred a monetary benefit on Defendant, by providing Defendant with their valuable Personal Information. In so conferring this benefit, Plaintiff and Class Members understood that part of the benefit Defendant derived from the Personal Information would be applied to data security efforts to safeguard the Personal Information.

151.    Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Personal Information.

152.    Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid their data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

153.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary value of the benefit belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

154.    Defendant acquired the monetary benefit and Personal Information through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

155.    If Plaintiff and Class Members knew that Defendant had not secured their Personal Information, they would not have agreed to provide their Personal Information to Defendant.

156.    Plaintiff and Class Members have no adequate remedy at law.

157.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their Personal Information is used; (iii) the compromise, publication, and/or theft of their Personal Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Personal Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Personal Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Personal Information in their continued possession and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Personal Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

158.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

159.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them.

## VII.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class defined herein, prays for judgment as against Defendant as follows:

a.) For an Order certifying this action as a Class action and appointing Plaintiff and his counsel to represent the Class;

b.) For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Personal Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

c.) For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to data collection, storage, and safety, and to disclose with specificity the type of Personal Information compromised during the Breach;

d.) For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

e.) Ordering Defendant to pay for lifetime credit monitoring services for Plaintiff and the Class;

f.) For an award of actual damages, compensatory damages, statutory damages and statutory penalties, in an amount to be determined, as allowable by law;

g.) For an award of punitive damages, as allowable by law;

h.) For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

i.) Pre- and post-judgment interest on any amounts awarded and,

j.) All such other and further relief as this court may deem just and proper.

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury.

**DOCUMENT PRESERVATION DEMAND**

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases, or other itemization of telephone numbers associated with the communications or transmittal of the calls as alleged herein.


DATED:          February 28, 2024

                              Respectfully submitted,

                              **SHAMIS & GENTILE P.A.**
                              */s/ Andrew Shamis*
                              Andrew J. Shamis, Esq.
                              Tx Bar No. 24124558
                              ashamis@shamisgentile.com
                              14 NE 1st Ave., Suite 705
                              Miami, Florida 33132
                              Tel: (305) 479-2299


                              *Counsel for Plaintiff and the Class.*